IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


TRACY BERNARD WILLIAMS                                        PLAINTIFF


                v.              Civil No. 4:10-CV-04085


TRACEY SMITH; and SONYA
SMITH                                                         DEFENDANTS

TRACY BERNARD WILLIAMS                                        PLAINTIFF


                v.              Civil No. 4:10-CV-04194


OFFICER ADAMS; OFFICER
WILKERSON; SGT. WELCH;
COPR. LAFAYETTE; WARDEN
GARY TURNER; and NURSE
WILLIAMS                                                      DEFENDANTS


## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This is a civil rights action filed by Plaintiff, Tracy Williams, pursuant to the provisions of 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.  Pursuant to the provisions of 28 U. S. C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.  An evidentiary hearing was held on February 5, 2013 and a supplemental hearing was held on July 16, 2013.  The case is now ready for decision.

Plaintiff is currently incarcerated in Arkansas Department of Corrections Ouachita River

1

Unit in Malvern, Arkansas.  The events at issue in this case occurred while Plaintiff was incarcerated in the Miller County Detention Center ("MCDC").  Specifically, Plaintiff maintains Defendant Carmallita Williams retaliated against him by enticing inmates to attack Plaintiff, locking Plaintiff down in the Supermax, and taking away his writing material and mat; and Defendant Gary Turner retaliated against him by locking him down in Supermax, and taking away his writing material and mat; and finally, Corporal Tracey Smith used excessive force against Plaintiff.[1]

## I.      BACKGROUND AND EVIDENCE

At the evidentiary hearing, the testimony of the following witnesses was heard: (1) Plaintiff Tracy Williams; (2) Marzell Woodberry; (3) Guy Bayless; (4) Sonya Smith; (5) Tracey Smith; (6) Gary Turner; (7) Alice Miller; (8) Carmallita Williams; and (9) Stevie Evans.  For purposes of this Report and Recommendation, the testimony of the witnesses will be briefly summarized.  At the conclusion of the hearing the Court left the record open in order to take the testimony of Claude Turner at a supplemental hearing.  A supplemental hearing was set for July 16, 2013 for the sole purpose of taking Claude Turner's testimony.  Claude Turner did not appear at the July 16, 2013 supplemental hearing.  The Court issued an Order to Show Cause to Claude Turner and ordered he appear before the Court on August 19, 2013.  The Court also advised the Plaintiff that he would not be brought back for the Show Cause Hearing, but directed the Plaintiff to submit any and all questions he would like answered by Claude Turner, and the Court would ask such questions at the Show Cause Hearing.  Counsel for Defendants informed the Court they had not questions for

---

[1]  All of Plaintiff's other claims and Defendants were dismissed at summary judgment. *See* ECF No. 72.

Claude Turner, and thus, also did not attend the show cause hearing.

**Plaintiff Tracy Williams**

Plaintiff testified he was housed in West Alpha barracks on May 22, 2010.  On this day Corporal Tracey Smith ("Defendant Smith") called Plaintiff out of the barracks and asked him to turn around and put his hands behind his back.  Defendant Smith then cuffed Plaintiff and slammed Plaintiff into the wall over and over again.  Defendant Smith then dragged Plaintiff down the hall  to the R&D area.  Once there Plaintiff asked for a grievance form and Defendant Smith pulled Plaintiff's face mask off and sprayed Plaintiff in the face with pepper spray.  Defendant then took Plaintiff into holding cell number 7.  Plaintiff asked for his property and discovered his partials were broken.

Plaintiff also testified Defendant Smith came into cell 7 a second time and sprayed Plaintiff for talking about Defendant Smith.  Additionally, Plaintiff testified Defendant Smith sprayed him a third time while in the R&D area.

According to Plaintiff, he did not have the opportunity to shower after the first spraying.  Plaintiff also testified he was coughing up blood after being sprayed.  Nurse Williams came to check on Plaintiff and told him to take a shower and she would leave him bandages and eye drops.  Nurse Williams did not leave either.  Plaintiff received medical attention at approximately 11:00 p.m. that same night—ointment, bandage, and eye drops.  Plaintiff also testified he suffered "scars" on his wrist from Defendant Smith cuffing him to tight.

Further, Plaintiff testified he was denied a copy of his injury report and denied the right to press charges against Defendant Smith by Sgt. Bayless and Claude Turner.

Plaintiff also testified he was moved to the Supermax on May 25, 2010 and remained there

for thirty-four (34) days. According to Plaintiff, Defendant Turner's testimony regarding the dates Plaintiff was in the Supermax are false. Additionally, Defendant Turner took away Plaintiff's writing material while he was in Supermax and he was not given any opportunity to write while in the dayroom. Plaintiff believes this was in retaliation for filing a previous lawsuit against the MCDC. Plaintiff also testified, Defendant Turner had knowledge of this lawsuit filing even if he had not yet been served because someone at the MCDC was opening Plaintiff's legal mail. Plaintiff also testified he talked to the Warden and was released from the Supermax. Plaintiff further testified he was able to send things to this Court while he was in Supermax but only because another inmate would sneak him in pencil and paper. Plaintiff also testified his mat was taken away from him for sixteen hours each day.

Additionally, Plaintiff testified inmate Stevie Evans, Plaintiff's cell mate, was writing on the walls, trying to flood the cell, and playing on the intercoms. Plaintiff reported Evans for this behavior and Evans was moved. Plaintiff believes Nurse Williams was encouraging Evans to do these things. Plaintiff also testified he heard Nurse Williams ask Evans to attack Plaintiff and approximately four days latter, on October 29, 2010, Evans attacked Plaintiff. Evans hit Plaintiff one time on the side of the head while the men were in the television room. Plaintiff believes Nurse Williams sought retaliation on Plaintiff for a previous lawsuit he filled against her and the MCDC. Plaintiff testified he never discussed his charges with Evans.

**Marzell Woodberry**

Marzell Woodberry was an inmate in the MCDC and housed in Alpha barracks on May 22, 2010. Woodberry testified that on May 22, 2010, Defendant Smith was conducting a "shakedown" in Alpha barracks. During the shakedown an unknown inmate yelled profanities at Defendant

Smith and Plaintiff laughed at this.  Defendant Smith then called Plaintiff into the hallway and took Plaintiff to a holding cell.  According to Woodberry, Defendant Smith did not spray or handcuff Plaintiff prior to removing him from the barracks.  Woodberry got in a fight later in the day and was placed in the same holding cell with Plaintiff.  Woodberry testified that while he was in the holding cell with Plaintiff, Defendant Smith and Plaintiff argued about Plaintiff's property and Defendant Smith pepper sprayed Plaintiff.  Woodberry also testified that Defendant Smith called Sonya Smith for back-up, Plaintiff was cuffed, and they dragged Plaintiff down the hallway, one on each arm.  Woodberry further testified that Plaintiff told him once they got to the R&D, Defendant Smith sprayed Plaintiff again.  According to Woodberry, Plaintiff was not resisting.

**Sergeant Guy Bayless**

Sergeant Bayless was employed at the MCDC on May 22, 2010 and served as Sergeant over the second shift.  Sergeant Bayless initially testified he did not remember anything regarding the incident with Defendant Smith and Plaintiff on May 22, 2010.  However, Sergeant Bayless went on to testify that on May 22, 2010 he was standing outside the holding cell and heard Defendant Smith and Sonya Smith yelling with Plaintiff because Plaintiff was irrate.  According to Sergeant Bayless, Plaintiff was brought out of the holding cell in handcuffs.  Sergeant Bayless also testified that when Plaintiff was removed from the holding cell, Sonya Smith had him by one shoulder and Defendant Smith had him by the other shoulder.  According to Sergeant Bayless, Plaintiff refused to get off the ground.  Defendant Smith gave several commands for Plaintiff to stand up.  Sergeant Bayless had no recollection of when or if pepper spray was used but the policy of the MCDC is a report must be completed at each discharge of pepper spray.  Further, one can of pepper spray holds more than one discharge.  Finally, the administrative secretary keeps the

pepper spray discharge reports.

**Sonya Smith**

Sonya Smith was employed as a guard at the MCDC on May 22, 2010, and he was involved in the incident with Plaintiff and Defendant Smith.  Sonya Smith testified his first encounter with Plaintiff was in Cell D, which is a cell in the Supermax and not a holding cell. There were two or more other inmates in this cell with Plaintiff.  According to Sonya Smith, Plaintiff was acting angry, disruptive, and belligerent, and Plaintiff wanted to speak with Defendant Smith.  Sonya Smith called for Defendant Smith and stood with the door to Cell D open.  When Defendant Smith arrived, Sonya Smith stepped back and allowed Defendant Smith to enter Cell D with Plaintiff and the other inmates.  Plaintiff complained about his medicine, the staff and expressed basic displeasure.  Plaintiff then began to get loud with Defendant Smith and Defendant Smith advised Plaintiff that he would be pepper sprayed if he did not calm down.  Plaintiff continued to act aggressive.  Defendant Smith then commanded Plaintiff to calm down.  Plaintiff was then pepper sprayed and handcuffed while still inside Cell D.  Plaintiff then sat on the floor in the cell and refused to stand up.  Sonya Smith and Defendant Smith then each took one of Plaintiff's shoulders and lifted him up and escorted him to the R& D area.  The other inmates were not being aggressive.  Sonya Smith testified that two to three minutes elapsed between the spraying and Plaintiff taking a shower.

**Corporal Tracey Smith**

Defendant Smith was employed at the MCDC on May 22, 2010.  Defendant Smith testified he does not remember why he was called to the West Alpha barracks or why he pulled Plaintiff from the barracks.  Defendant Smith did remember that once he pulled Plaintiff from the West

6

Alpha barracks he placed him in holding cell 7, and Plaintiff's property was brought to him. According to Defendant Smith, Plaintiff was unhappy about his property. Defendant Smith responded commanding Plaintiff to calm down or he would be removed and placed in segregation. Plaintiff did not calm down. Defendant Smith then commanded Plaintiff to gather his belongings and exit the holding cell. Plaintiff continued to argue. Defendant Smith then warned Plaintiff he would be pepper sprayed if he did not comply. Plaintiff continued to argue. Defendant Smith then pepper sprayed Plaintiff. After the spray, Plaintiff flailed around and it was a struggle to cuff him. Plaintiff then sat on the floor. Defendant Smith also testified that Plaintiff was moved to the R&D area and allowed to shower five to ten minutes after the spraying. According to Defendant Smith there were two or three inmates in holding cell 7 with Plaintiff during this time.

Defendant Smith testified that the use of force progression at the MCDC is to command, warn, and then spray. Defendant Smith also testified that officers are obligated to fill out use of force reports after use of pepper spray. Additionally, Defendant Smith testified he filled out an incident report and turned it in along with the use of force report at the end of his shift. According to Defendant Smith there is no log for showers. Lastly, Defendant Smith testified he did not recall if medical personnel were called to R&D to attend to Plaintiff.

**Gary Turner**

Gary Turner was the Administrator of the MCDC in May 2010. Defendant Turner initially testified he could not recall the incident on May 22, 2010 but Defendant Turner testified he did order Plaintiff to the Supermax for thirty (30) days as a result of the May 22, 2010 incident. Defendant Turner did not remember the date Plaintiff was placed in the Supermax but he thought it may have been May 25, 2010. Defendant Turner also testified he remembers speaking with

Plaintiff while Plaintiff was in the Supermax. Additionally, Defendant Turner testified that Plaintiff was released from the Supermax on May 26, 2010 after promising Defendant Turner he would be on good behavior.  Defendant Turner had no recollection of whether Plaintiff received a diciplinary hearing prior to his placement in the Supermax.

According to Defendant Turner the Supermax is used for three purposes: (1) protecting inmates (2) punishing inmates; or (3) for health purposes.  For example, the medical department can recommend an inmate be placed in segregation in the Supermax for his health, an inmate may be placed in the Supermax if he has gotten in trouble, or an inmate may be placed in the Supermax if he needs protection from other inmates.  Defendant Turner testified that the nurse would bring it to his attention if an inmate needed to be placed in the Supermax for health reasons but a nurse does not have the authority to place an inmate in the Supermax.  While in the Supermax inmates have no writing materials or personal property inside their cells but they are allowed out of their cells for one hour each day and given the opportunity to write, allowed to watch television, or to have yard time.

Defendant Turner testified that the MCDC has a written policy on placing inmates in the Supermax.  According to Defendant Turner a report is written on the incident, this report goes to the Criminal Investigation Division ("CID") office and an investigator investigates the incident. There is also a written order to place the inmate in the Supermax.  Defendant Turner ceased his employment with the MCDC in August 2010 and left all records at the MCDC when he left.

Finally, Defendant Turner testified he had no knowledge of Defendant Williams having any involvement in Plaintiff's placement in the Supermax or with Plaintiff's property being taken away.

**Allice Miller**

Sergeant Miller was employed at the MCDC in May 2010 but she testified she did not work during the shift on which the incident between Plaintiff and Defendant Smith occurred. Sergeant Miller also testified she had no knowledge of Plaintiff being placed in the Supermax, and she did not remember talking to Plaintiff on May 25, 2010.

**Nurse Williams**

Nurse Carmallita Williams was the Health Service Administrator at the MCDC on May 22, 2010. Defendant Williams testified that on May 22, 2010 she heard, over the radio, that Plaintiff was pepper sprayed while she was on her way to the R&D area to check on another inmate. On her way to the R&D area Defendant Smith stopped her and asked that she check on Plaintiff. According to Defendant Williams, she did smell pepper spray on Plaintiff when she examined him in the R&D area, but it was not an overwhelming odor and she was able to stand in close proximity to Plaintiff. Defendant Williams testified she did not believe Plaintiff was sprayed with pepper spray multiple times because if he had been the odor on him and around him would have been stronger. Further, Defendant Williams testified she did not observe any injuries to Plaintiff when she examined him on May 22, 2010. Defendant Williams also testified she advised Plaintiff to shower and he refused. Defendant Williams then left the R&D area and has no knowledge of when Plaintiff showered.

Additionally, Defendant Williams testified she did not have the authority to place an inmate in the Supermax, but she could recommend that an inmate be placed in a cell closer to the nursing station for medical reasons. The West Alpha barracks was the medical barracks and the only place Defendant Williams could recommend an inmate be placed for medical purposes. Defendant Williams testified she did not remember whether Defendant Turner asked her if Plaintiff should

be isolated for medical reasons.  Additionally, Defendant Williams testified that the face mask Plaintiff wore was not prescribed by any doctor or nurse, and Plaintiff's leukemia was in remission.

Further, Defendant Williams testified she did not have Plaintiff's mat or writing materials taken from him and she did not tell any other inmate of Plaintiff's charges.

**Stevie Evans**

Stevie Evans is currently an inmate in the Arkansas Department of Corrections but was housed in the MCDC with Plaintiff.  Evans testified that he and Plaintiff were cell mates and Plaintiff told Evans he was incarcerated on drug charges.  Evans also testified that Plaintiff allowed Evans to view his charge papers that showed Plaintiff's charge to be rape.  Plaintiff then told Evans he was incarcerated for rapping his daughter but that his daughter lied about the rape.

Further, Evans testified he never communicated with Defendant Williams and only knew her from medication pass out.  According to Evans, he only punched Plaintiff as part of a scheme Plaintiff devised to make money through filing section 1983 claims.  Evans also testified that Plaintiff encouraged him to file section 1983 claims.  Additionally, Evans testified he did not have a "beef" with Plaintiff.  Lastly, Evans testified that inmates charges, especially sex charges get around the county jail.  The inmates go to court two at a time and while in court the charges are read out loud.

**Claude Turner**

Claude Turner was employed at the MCDC as a correctional officer from February 2009 through September 2011.  Turner testified that he remembered Plaintiff being incarcerated in the MCDC.  Turner also testified he worked the 7 - 11 p.m. shift with Defendant Smith, and Sergeant Bayless was their supervisor on this shift.  Turner testified he had no knowledge of any altercation

or incident between Plaintiff and Defendant Smith on May 22, 2010, but according to Turner, Defendant Smith was "pepper spray happy." Turner had no knowledge of whether Defendant Smith was transferred to the graveyard shift because of his use of pepper spray.

Turner also testified he did not deny Plaintiff a grievance form or refuse to allow Plaintiff to speak with a deputy sheriff on May 22, 2010. Turner also did not tell Plaintiff there was no deputy sheriff to speak with on May 22, 2010. Turner was unsure if the surveillance cameras at the MCDC were operating properly on May 22, 2010 but testified he never saw any footage from the cameras because it could only be viewed from central control. Turner did not work central control. Turner further testified, he had no memory of Plaintiff asking him to review the surveillance footage from May 22, 2010. According to Turner, reviewing surveillance footage was not within his job duties as a correctional officer at the MCDC. Any request for surveillance footage would have gone through administration.

Finally, Turner testified Defendant Williams always did what ever she could to help the inmates even though they frequently disrespected her.

## II.   DISCUSSION

As an initial matter, the Court notes, despite the multiple references in the testimony to documents customarily created and maintained at the MCDC at the time in question, regarding lockdown procedures, lockdown orders, use of force forms, and diciplinary forms, no such documents were offered as evidence in this matter.

### A.   Retaliation

Plaintiff claims Defendants Williams and Turner retaliated against him for filing a prior section 1983 lawsuit and also for attempting to press charges on Defendant Smith for the May 22,

11

2010 incident.  Specifically, Plaintiff alleges Defendant Williams (1) enticed inmate Stevie Evans to attack Plaintiff ; (2) had Plaintiff locked down in the  Supermax; and (3) had Plaintiff's writing materials and mat taken away all in retaliation for Plaintiff's prior section 1983 lawsuit.  Plaintiff also alleges Defendant Turner (1) locked Plaintiff down in the Supermax; and (2) had his writing materials and mat taken away in retaliation for a prior section 1983 lawsuit and his attempt to file charges on Defendant Smith over the May 22, 2010 incident.

In general, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber,* 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts,* 909 F.2d 1203, 1206 (8th Cir. 1990)).  "Indeed, the retaliatory conduct does not itself need to be a constitutional violation in order to be actionable."  *Id.*  Additionally, there is no independent injury requirement when retaliatory conduct is involved.  *See Dixon v. Brown,* 38 F.3d 379, 380 (8th Cir.1994).

To prevail on his retaliation claim, Plaintiff must demonstrate: (1) that he engaged in protected activity; (2) that Nurse Williams and Warden Turner responded with adverse action that would "'chill a person of ordinary firmness' from continuing in the activity;" and (3) that the adverse action was motivated at least in part by the exercise of the protected action.  *See L.L. Nelson Enterprise Inc. v. County of St. Louis, Mo.,* 673 F.3d 799, 807-8 (8th Cir. 2012) (quoting *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004)).

Plaintiff has demonstrated he engaged in protected activity by filing a previous section 1983 claim against Nurse Williams and the MCDC.  *See e.g., Burgess,* 39 F.3d at 218;  *see also Sanders,* 724 F.2d at 666. The Court will address the second and third requirements below with specific reference to each Defendant.

1.    *Nurse Williams*

The Court credits Defendant Williams' testimony that she did not tell Evans Plaintiff's charges.  Further, the Court credits Evans' testimony that he had no "beef" with Plaintiff, he had no communications with Defendant Williams, and his attack on Plaintiff was of Plaintiff's own devising.  Accordingly, the testimony indicates Evans attack on Plaintiff was not enticed by Defendant Williams.  Therefore, the attack was in no way an adverse action, on the part of Defendant Williams, meant to chill Plaintiff's filing of a section 1983 actions.

The Court also credits Defendant Williams' testimony that she did not have the authority to place an inmate in the Supermax and she did not have Plaintiff's writing material and mat taken away from him.  Additionally, the Court credits Defendant Turner's testimony that he ordered Plaintiff be placed in the Supermax, and he had no knowledge of Defendant Williams having any involvement in Plaintiff's placement in the Supermax or with Plaintiff's property being taken away.  Accordingly, the testimony again indicates Plaintiff's placement in the Supermax and removal of his writing materials and mat were not the result of any action by Defendant Williams.  Therefore, Plaintiff's placement in the Supermax and removal of his writing materials and mat were in no way an adverse action, on the part of Defendant Williams, meant to chill Plaintiff's filing of section 1983 actions.

2.    *Defendant Turner*

Plaintiff claims Defendant Turner placed him in the Supermax on May 25, 2010, and kept him there for thirty-four (34) days in retaliation for Plaintiff filing a prior section 1983 lawsuit and attempting to file charges against Defendant Smith for the May 22, 2010 incident.

There was no testimony offered to show Defendant Turner's action of placing Plaintiff in

13

the Supermax was motivated in anyway by Plaintiff's filing of a previous section 1983 action. Plaintiff simply testified he believed that retaliation was the motivation behind Defendant Turner placing him in Supermax, however, Plaintiff also testified that after speaking with Defendant Turner (at some unknown time) Defendant Turner released Plaintiff from the Supermax. This testimony is contradictory to Plaintiff's believe that Defendant Turner had retaliatory motives against him. Further, Defendant Turner testified that the Supermax is used to punish inmates for bad behavior, among other things. Additionally, Defendant Smith and Sonya Smith's testimony indicated Plaintiff was uncooperative and belligerent on May 22, 2010 warranting Defendant Smith to pepper spray him. The Court finds, from all of the testimony and lack of testimony or evidence to the contrary, that Plaintiff was placed in the Supermax on May 25, 2010 as punishment for his actions on May 22, 2010.

Further, the Court credits Defendant Turner's testimony that all inmates in the Supermax are deprived of writing material and personal property while inside their cells. Therefore, Plaintiff was not singled out by having his writing material and mat taken away.

Accordingly, the Court finds there is no evidence indicating Defendant Turner's actions of placing Plaintiff in the Supermax and removing his writing material and mat were motivated in any part by Plaintiff filing a prior section 1983 action or attempting to press charges on Defendant Smith.

B.    Excessive Force

Plaintiff claims Defendant Smith used excessive force against him on May 22, 2010 when he (1) sprayed him with pepper spray three separate times; (2) slammed him into the wall repeatedly; and (3) dragged him down the hallway by his handcuffs.

14

The record does not indicate whether Plaintiff was a pretrial detainee or a convicted prisoner at the time of the alleged use of excessive force.  In view of this, I will apply the objective reasonableness standard applicable to pretrial detainees under the Fourteenth Amendment.  *See Johnson-El v. Schoemehl,* 878 F.2d 1043, 1048 (8th Cir. 1989). The Eighth Circuit Court of Appeals noted:

> [u]nlike convicted prisoners, the state has no right to punish [pretrial detainees]. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447 (1979).  Their confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth  Amendments rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners.  *Id.* The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency.  Constitutionally infirm practices are those that are punitive in intent, those that are not rationally related to a legitimate purpose or those that are rationally related but are excessive in light of their purpose.  *Id.* at 538, n. 20.

*Johnson-El v. Schoemehl*, 878 F.2d at 1048.

The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rely on the same objective reasonableness standard as arrestee claims grounded in the Fourth Amendment.  *Andrews v. Neer,* 253 F.3d 1052, 1060 (8th Cir. 2001) (citing *Schoemehl,* 878 F.2d at 1048-9).  The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals.  *See Schoemehl,* 878 F.2d at 1048.  The relevant inquiry being whether the officials acted in an objectively reasonable manner in light of the facts and circumstances confronting them without regard to their underlying intent or motivation.  *See Graham v. Connor*, 490 U.S. 386, 397 (1989).  The Court should consider the reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.   Finally, the Court should consider whether the totality of the

circumstances justifies the use of force.  *Foster v. Metropolitan Airports Comm'n,* 914 F.2d 1076, 1081 (8th Cir. 1990).

      1.   *Pepper spray*

The parties do not dispute that Defendant Smith sprayed Plaintiff with pepper spray once while Plaintiff was inside the holding cell.  Plaintiff, however, contends Defendant Smith sprayed him three separate times.  While the Court considered, Turner's testimony that Defendant Smith in general was "pepper spray happy," Turner also testified he had no knowledge of the specific incidents at issue in this case.  Furthermore, the Court credits Defendant Williams' testimony that the odor of pepper spray on Plaintiff after the May 22, 2010 incident was not strong enough to indicate Plaintiff had been sprayed multiple times.  Defendant Smith also testified to only one spraying—inside the holding cell.  Further, Plaintiff failed to offer any evidence, other than his own allegations, to support his contention that Defendant Smith sprayed him with pepper spray on three separate occasions on May 22, 2010.  Accordingly, the Court finds the testimony does not support Plaintiff's contention that he was sprayed three separate times on May 22, 2010.

The Court credits the following testimony regarding the spraying inside the holding cell. Plaintiff testified that once he was placed into the holding cell he requested his property.  Once his property was delivered he discovered his dental partial was broken.  Woodberry testified that he witnessed Plaintiff arguing with Defendant Smith over Plaintiff's property.  Sergeant Bayless testified that Plaintiff was irate with Defendant Smith inside the holding cell.  Sonya Smith testified that Plaintiff was acting angry, disruptive, and belligerent inside the holding cell.[2]

---

[2] The Court notes, Sonya Smith characterized the cell as cell D rather than a holding cell but the Court will refer to as a holding cell as Plaintiff, Defendant Smith, and Sergeant Bayless all did.

Additionally, Sonya Smith and Defendant Smith testified there were two or more other inmates inside the holding cell with Plaintiff.  Sonya Smith also testified he called Defendant Smith to the holding cell, and when Defendant Smith arrived: (1) Plaintiff got loud with Defendant Smith; (2) then Defendant Smith advised Plaintiff to calm down or he would be pepper sprayed; (3) Plaintiff continued to act aggressive; (4) Defendant Smith commanded Plaintiff to calm down; and (5) then Defendant Smith pepper sprayed Plaintiff.  Defendant Smith testified that Plaintiff was upset about his property.  According to Defendant Smith: (1)  he commanded Plaintiff to calm down and advised Plaintiff if he did not calm down he would be placed in segregation; (2) Plaintiff did not calm down; (3) he then commanded Plaintiff to gather his belongings and come out of the holding cell to be moved to segregation; (3) Plaintiff did not comply and continued to argue with Defendant Smith; (4) he then warned Plaintiff he would be peppered sprayed if Plaintiff did not comply; (5) Plaintiff again failed to comply and continued to argue; and (6) he pepper sprayed Plaintiff.  Defendant Smith also testified Plaintiff flailed around after being sprayed and it was a struggle to get him cuffed.

This testimony shows Plaintiff failed to follow two direct orders from Defendant Smith to calm down and gather his belongings for transport to segregation, and also that Plaintiff did not heed Defendant Smith's warning of pepper spray.  The Seventh Circuit artfully articulates the importance of prisoners following orders:

> Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them.... Inmates are and must be required to obey orders. When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger.

*Lewis v. Downey,* 581 F.3d 467, 476-7 (7th Cir. 2009), *cert. denied,* 130 S.Ct. 1936 (2010),

quoting *Soto v. Dickey,* 744 F.2d 1260, 1267 (7th Cir. 1984), *cert. denied,* 470 U.S. 1085 (1985). "Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish*, 441 U..S. 520, 546 (1979). "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 544. This deference is not only afforded to situations responding to actual confrontations with riotous inmates but also applies to "prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." *Whitley v. Albers*, 475 U.S. 312, 322 (1986). I find the testimony shows Defendant Smith was objectively reasonable in believing force was necessary in light of the facts and circumstances confronting him in the holding cell on May 22, 2010.

I now turn to whether the particular force used, pepper spray, was in excess of that reasonably believed necessary to achieve the goals of restraining Plaintiff and maintaining security in the MCDC. *See Schoemehl,* 878 F.2d at 1048. Here, Plaintiff defied two direct orders and a warning that pepper spray was imminent if he did not comply. Additionally, Plaintiff was not alone in the holding cell as two or more other inmates were also being held in the cell. Therefore, I find Plaintiff posed a potential risk in the holding cell to the other inmates, himself, and the officers involved given his agitated state. Thus, Defendant Smith's actions were objectively reasonable under the circumstances, and the force used was justified. *See e.g., Walker v. Kemna*, Civil No. 10-4186, 2011 WL 5374567, (W.D. Mo. Nov. 4, 2011) (holding an officer's pepper spray of inmate in a closed locked cell was reasonable when the inmate refused orders to ready

himself for transport from the cell).

      2.    *Slamming into wall*

Plaintiff also testified Defendant Smith pulled him out of West Alpha barracks, handcuffed him and then repeatedly slammed him into the wall on May 22, 2010.  Defendant Smith testified that he removed Plaintiff from West Alpha barracks and placed him in the holding cell but did not testify whether he did or did not cuff plaintiff and slam him into the wall during the removal from West Alpha Barracks.  There was no other evidence offered on this issue.

Because no conflicting testimony or evidence was offered, the Court finds Plaintiff's testimony that Defendant Smith repeatedly slammed him into the wall while he was handcuffed credible.  However, the Court notes Plaintiff did not put forward evidence of any injury he received as a result of Defendant Smith slamming him into the wall outside the West Alpha barracks. Plaintiff only testified to alleged injuries he suffered as a result of the pepper spray and being dragged down the hallway by his handcuffs.  Additionally, the Court credits Defendant Williams's testimony that Plaintiff did not have any injuries when she examined him on May 22, 2010.

The Court recognizes that *de minimis* injuries do not foreclose a pretrial detainee's excessive force claim.  *See Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011).  "[T]here is no uniform requirement that a plaintiff show more than de minimis injury to establish an application of excessive force."  *Id.*  Here, however, Plaintiff has not alleged or shown any injury stemming from being slammed into the wall by Defendant Smith, and the degree of injury received is "certainly relevant insofar as it tends to show the amount and type of force used."  *Id.*  While the Court has very little evidence to analyze regarding Defendant Smith's use of force against Plaintiff outside the West Alpha Barracks, the complete absence of any injury supports a

conclusion that the force used by Defendant Smith, in slamming Plaintiff into the wall, was not unreasonable or excessive.  *See e.g., Johnson v. Carroll*, 658 F.3d 816, 830 (8th Cir. 2011).

        3.    *Dragging by handcuffs*

Lastly, Plaintiff claims Defendant Smith dragged him down the hall by his handcuffs injuring Plaintiff's wrists.  This claim is contradicted by the testimony.  Woodberry testified Defendant Smith and Sonya Smith dragged Plaintiff down the hallway by Defendant Smith holding one of Plaintiff's arms and Sonya Smith holding the other arm.  Further, Sergeant Bayless testified that Plaintiff refused to get up from the floor of the holding cell and Defendant Smith and Sonya Smith removed him from the holding cell with one having each of Plaintiff's shoulders.  Sonya Smith also testified that after Plaintiff was pepper sprayed and cuffed in the holding cell, Plaintiff refused to get up off the floor.  Thus, Sonya Smith and Defendant Smith each took one of Plaintiff's shoulders and lifted him up and escorted him to the R&D area.  Additionally, the Court credits Defendant Williams' testimony that Plaintiff did not have any injuries when she examined him after the May 22, 2010 incident.  Therefore, I find the facts indicate Plaintiff was not dragged down the hallway by his handcuffs.  Therefore, no excessive force was used in escorting Plaintiff to the R&D area after he was pepper sprayed on May 22, 2010.

## III.   CONCLUSION

Accordingly, I recommend all of Plaintiff's claims against Defendant Williams, Turner, and Smith be **DISMISSED** with prejudice and this case be dismissed.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are**

20

reminded that objections must be both timely and specific to trigger de novo review by the

district court.

      **DATED** this **20th day of August 2013.**


                       /s/ *J. Marschewski*
                       HON. JAMES R. MARSCHEWSKI
                       CHIEF UNITED STATES MAGISTRATE JUDGE